CuitiA, per
Nott, J.
I do not think this case entirely free from difficulty. I have, therefore,'bestowed no inconsiderable attention on it; and I have at length come to the conclusion, that the decree of the Chancellor must be affirmed; although I have not arrived at that conclusion by the same course of reasoning to which the Chancellor has resorted. I am induced to think, that much of the difficulty, which has been thrown in the way of a clear understanding of the case, has resulted from considering the outstanding debts as equitable assets. Outstanding debts, when collected, are as much legal assets as tangible property or money in hand. .And I can-o í x v v not find that they have ever otherwise been considered by any of our Courts. Legal assets are such as constitute the funds for the payment of debts, according to their legal priority. 1 Madd. Cha. 586. Equitable assets are such as can be reached only by the Court of Equity. 1 Madd. J J n i i ¶ Cha. 586. Outstanding debts may be collected -by the executor or administrator without the aid of the Court Equity, and constitute the legitimate fund for the pay- „ , , ,. , , . . , ment of debts, according to legal priority. All the rules of the Court of Equity, therefore, with regard to the distribution of equitable assets, are out of the question in this case. It is intended to be urged that, by bringing the case into the Court of Equity, the assets must be distributed according to the rules of that Court in case of *470 equitable assets, without regard to the provisions of the act. It may be an important question, though it does not appear to me to be one of much difficulty. In the case of Brady v. Sheil, 1 Campb. Rep. 148, Sir James Mansfield said “ he wished it were more generally known (for he believed that the lawyers in the Court of King’s Bench were not aware of it) that through the medium of a Court of Equity the creditors of a deceased insolvent debtor may always be compelled to take an equal distribution of the assets. It was only necessary for a friendly bill to be filed against the executor or administrator to account, after which the Chancellor would enjoin any of the creditors from proceeding at law.” But it will be recollected that an executor in England may pay one creditor, or confess judgment to one for the amount of his debt, in exclusion of all the rest, in equal degree. 2 Black. Com. 512. 1 P. Wms, 255. And I presume that all that was meant by Sir James Mansfield was merely that a Court of Equity would prevent such preference from being given, and would marshal the assets among all the creditors in equal degree. But that is nothing more than what is required by our act. So that the executor may do here precisely what a Court of Equity, under similar circumstances, would do in England.
If a Court of Equity in England would do more, I can only say, that I am not prepared to concede to such Court in this state the power of directing a distribution of the legal assets of an estate, different from that required by the act. Courts of Equity are as much bound by positive statutes as Courts of Law. How it would be in case of equitable assets it is unnecessary now to decide.
The case then comes back to the original question, whether the execution creditors still maintain the lien which they had acquired % I am of opinion the lien is still preserved. Suppose the deceased had in his life time given a mortgage of the personal property. I ap *471 prehend that it will not be contended that the judgment creditors, or other preferred creditors, could have divested the mortgagee of his lien; and as it regards ere-ditors I can see no difference whether the lien be by execution or by mortgage. The act is merely directory to the executor as to the manner of disposing of the 1 0 . assets where there are no pre-existing liens, and this appears to me to be consonant with the English decisions as well as our own. 1 Madd. Cha. 595. 3 Atk. 326. 3 Salk. 83. In the case of Sharpe v. The Earl of Scarborough, 4 Ves. 538, it is said assets are not marshalled against judgment creditors. In the case of the Commissioners of Public Accounts v. Greenwood and others, 1 Desaus. Rep. 450, it was decided, that the state had no prerogative to be paid out of the effects of the debtor in preference to any of the citizens who have judgments, mortgages, or other liens. That the act of 1789 is only directory to executors and administrators, and does not alter the case in relation to the rights of the state, and other creditors. (See the case more fully reported in an appendix to the same volume.) It was there held that execution creditors should still maintain their liens against the state, to whom the deceased was largely indebted. And in the case of Brown, Executor of M’Kearney v. Gilliland, 3 Desaus. Rep. 530, it was decided that the purchaser of a negro at the sale of an estate, made by permission of the Ordinary, should not be required to pay the purchase money until the executor should secure him against an execution which had been obtained against the testator in his life time, although the execution had been returned nulla bona before his death, and before he became owner of the property in question. It was considered that the execution still operated as a lien upon it, and that it could not be at the disposal of the executor until that lien was removed by satisfaction of the debt. These *472 decisions appear to be conclusive of the question now un¿er consideration.
T Legal assets must be dis-the'acfrfte^ satisfying all liens existing before the ¿®^r°fthe
*472 It is thought that the decree of the Chancellor is ambiguous, in not directing in what order the debts shall be paid, but when we take it in connection with the report of the Commissioner, and the subsequent confirmation of that report, the ambiguity is removed, and the order in which the debts shall be paid is clearly prescribed. The motion therefore must be refused and the decree affirmed.

Decree affirmed.